# IN THE UNITED STATES DISTRICT FOR THE
# SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| **NUVASIVE, INC.,** )<br>)<br>**Plaintiff** )<br>v. )<br>)<br>**JEFFREY HARRISON,** )<br>**BEAU DEWALL and** )<br>**DARIN NEWELL,** )<br>)<br>**Defendants.** ) | Case No. _____ |

## VERIFIED COMPLAINT

By and through its counsel, and for its Complaint against Jeffrey Harrison, Beau DeWall, and Darin Newell, Plaintiff NuVasive, Inc. states:

## NATURE OF ACTION

1. NuVasive files this lawsuit because Defendants violated and continue to violate the common law and contractual obligations they owe to NuVasive (both during and after their respective employments) by unfairly competing with it. This unfair competition includes, without limitation, soliciting (with at least some degree of success) their former NuVasive customers and colleagues on behalf of their new employer, Howmedica Osteonics Corporation, acting through its Stryker Spine division ("Stryker Spine"), which is one of NuVasive's direct competitors.

841963.1/020210529

Defendants are utilizing NuVasive's confidential and proprietary information, as well as the industry-leading training NuVasive provided to them in their raid on its customers and sales force. In addition to lost revenue, these wrongful acts are destroying NuVasive's customer relationships and goodwill.

## THE PARTIES

2. NuVasive is a Delaware corporation with its headquarters in San Diego, California. It is a market-leading, innovative designer, manufacturer, and promoter of products and processes used to treat spinal disease that it markets through a highly-trained sales force consisting of directly-employed personnel and exclusive sales agents.

3. Defendant Jeffrey Harrison is an individual who resides in and is a citizen of the State of Iowa. Between June 22, 2015, and May 16, 2021, he marketed NuVasive's products, as a direct employee – in the role of a Sales Specialist – to medical facilities and surgeons within a sales territory in the Southern District of Iowa.

4. Defendant Beau DeWall is an individual who resides in and is a citizen of the State of Iowa. Between October 1, 2018, and May 16, 2021, he marketed NuVasive's products, as a direct employee – first in the role of Sales Associate, Iowa, and then, as of January 1, 2020, as a Sales Specialist – to medical facilities

and surgeons within a sales territory in the Southern District of Iowa, and supported the surgeons' use of those products in the operating room.

5. Defendant Darin Newell is an individual who resides in and is a citizen of the State of Iowa. Between April 10, 2019, and May 16, 2021, he marketed and/or assisted in marketing NuVasive's products, as a direct employee – in the role of a Sales Associate – to medical facilities and surgeons within a sales territory in the Southern District of Iowa, and then supported the surgeons' use of those products in the operating room.

6. NuVasive provided Defendants – two of whom, Defendant DeWall and Defendant Newell, had no prior experience in the spine industry – with its industry-leading, proprietary training and entrusted each Defendant with its confidential and proprietary information during their NuVasive employments. This confidential and proprietary information includes, without limitation, NuVasive's pricing, pricing strategies, sales strategies, competitive information, customer information (including, without limitation, surgeon preferences), product specifications, and sales histories and practices, all of which would be of great benefit to NuVasive's competitors.

7. As a result, at least in part, of the training and confidential information that NuVasive provided, each Defendant became the face of NuVasive to many of the surgeons and medical facilities in their NuVasive sales territories.

8. Each Defendant generated goodwill with NuVasive's current and prospective customers during their NuVasive employments. NuVasive owns that goodwill.

## JURISDICTION, VENUE, AND GOVERNING LAW

9. The parties are completely diverse, and the amount in controversy is greater than $75,000, exclusive of interest or costs. Accordingly, this Court has subject matter jurisdiction pursuant to 28 U.S.C. Section 1332.

10. Each Defendant lived in and performed services for NuVasive in the Southern District of Iowa. Accordingly, this Court has personal jurisdiction over each Defendant. Additionally, venue is proper in this Court pursuant to 28 U.S.C. Section 1391(b).

11. NuVasive's claims against Defendant Harrison are governed by Iowa law, while NuVasive's claims against Defendant DeWall and Defendant Newell are governed by Delaware law.

## FACTS RELEVANT TO ALL COUNTS

### Defendants' contractual obligations to NuVasive

12. Each Defendant, as a condition of his employment with NuVasive, agreed to and signed a Proprietary Information, Inventions Assignment, and Non-Competition Agreement ("PIIA"). Defendant Harrison signed the January 22, 2013, version of the PIIA, while Defendant DeWall and Defendant Newell signed the

January 3, 2016, version. NuVasive attaches copies of Defendant Harrison's, Defendant DeWall's, and Defendant Newell's PIIAs as **Exhibit 1**; **Exhibit 2**; and **Exhibit 3**, respectively.

13. At the time Defendants terminated their NuVasive employments, they shared an assigned sales territory (with two other sales professionals) that included all of the medical facilities in which spine surgeries take place and the spine surgeons who operate in those facilities in the Des Moines and Waterloo-Cedar Falls Metropolitan Areas (the "Sales Territory").

14. Section VI of each Defendant's PIIA provides, among other things, that they will have access to and obtain knowledge regarding NuVasive's "Proprietary Information" (as defined by the PIIA) during their NuVasive employments and that NuVasive will be irreparably harmed if they were to use that Proprietary Information to NuVasive's detriment.

15. As promised by the PIIAs, NuVasive granted Defendants access to its Proprietary Information, and they obtained knowledge of that information during the course of their NuVasive employments.

16. Section VI of Defendants' PIIAs precludes them from, directly or indirectly, inducing or influencing, or seeking to induce or influence, any NuVasive employee, agent, independent contractor, consultant, etc. to join a competitive business during their NuVasive employments and for one year after those

employments terminate. Additionally, Section VI of Defendant Newell's and Defendant DeWall's PIIAs also precludes them from, for the same time period, soliciting, calling upon, or providing services to any of NuVasive's Customers (as that term is defined in Defendants' PIIAs) in their shared assigned sales territory.

17. Section VII of the Defendants' PIIAs precludes them from competing with NuVasive, on behalf of a "Conflicting Organization," within their Sales Territory during their NuVasive employments and for one year after those employments terminate.

18. Stryker Spine is a Conflicting Organization as defined by Section VII of the Defendants' PIIAs.

19. The vast majority of spinal hardware companies require their sales professionals to agree to non-competition and non-solicitation clauses similar to those found in Sections VI and VII of Defendants' PIIAs because, without limitation:

- the spinal hardware industry is highly competitive;
- participants in this industry entrust their sales professionals with confidential and proprietary information, and (at least in NuVasive's case) proprietary training; and
- sales professionals often become the face of their employer to the employer's surgeon customers.

20. Like Defendants' new employer, Stryker Spine, NuVasive imposes one-year, post-employment non-competition and non-solicitation restrictions on its sales force. In NuVasive's experience, assuming that the departing sales

professional honors his or her restrictive covenants, one year is a sufficient time for it to replace that departing sales professional and give the new sales professional sufficient time to develop a relationship with the departing sales professional's customers so that he or she can fairly compete with the departing sales professional after he or she returns to the restricted territory. Additionally, one year is typically a sufficient time for the relevancy of much of the confidential and proprietary information NuVasive shares with its sales force to expire.

21. As it is important for NuVasive to enjoy the benefits of its bargains with Defendants, Section XVII of Defendant Harrison's PIIA and Section XVIII of Defendant Newell's and Defendant DeWall's PIIAs provide that their non-solicitation and non-competition obligations are tolled for any period of time they are not in compliance with those obligations.

**Defendants' termination of their NuVasive employments**

22. Defendants failed to return numerous communications from their NuVasive supervisors in the ten-day period preceding the date they voluntarily terminated their NuVasive employments.

23. On May 16, 2021, Defendants, without advance warning, terminated their NuVasive employments, effective immediately. NuVasive attaches copies of Defendant Harrison's, Defendant DeWall's, and Defendant Newell's resignation emails as **Exhibit 4, Exhibit 5**, and **Exhibit 6**, respectively.

24. Defendants informed the spine surgeons in their collective sales territory about their plan to leave NuVasive and join Stryker Spine before they informed NuVasive, and solicited business from some of those surgeons.

25. By resigning *en masse*, Defendants intended to leave (and in fact left) NuVasive without sufficient personnel to support their Sales Territory, making it easier for them to convert NuVasive's business in that Sales Territory to their new employer, Stryker Spine.

26. Shortly before receiving the Defendants' resignation notices, NuVasive received a call from a spine surgeon in their sales territory who inquired as to whether NuVasive had sufficient manpower in the sales territory to support an upcoming spine surgery.

27. Iowa Methodist Medical Center, in Des Moines, Iowa, is a facility that was within Defendants' Sales Territory at the time they voluntarily terminated their NuVasive employments.

28. Two of the spine surgeons at Iowa Methodist (the "Methodist Surgeons") exclusively (or nearly exclusively) utilized NuVasive's products when performing fusion surgeries in (at least) calendar years 2020 and 2021.

**Defendants' violations of the common law and contractual obligations they owe to NuVasive**

29. During the last week of Defendants' respective NuVasive employments, the Methodist Surgeons performed some surgeries – that one or more

of the Defendants supported in the operating room – in which they utilized NuVasive's instruments and biologic product(s), but implanted medical devices that, upon information and belief, were designed and marketed by Stryker Spine (the "Competitive Implants").

30. In addition to one or more of the Defendants supporting the surgeries, other individuals associated with Stryker Spine also attended the surgeries described in the preceding paragraph.

31. One or more of the Defendants solicited the Methodist Surgeons to utilize the Competitive Implants.

32. A representative from Iowa Methodist emailed purchase orders for the Competitive Implants used in at least two of these surgeries to Defendant Harrison.

33. Though each Defendant knew that the Methodist Surgeons intended to, and, in fact, did, utilize Competitive Implants, none of them shared this knowledge with NuVasive, even though the Methodist Surgeons had not utilized any competitive medical devices in calendar years 2020 and 2021.

34. Defendants did not report the Methodist Surgeons' use of the Competitive Implants because they were, at least in large part, responsible for the Methodist Surgeons' decisions to utilize the Competitive Implants, and because they wanted the Methodist Surgeons to support their collective decision to join Stryker Spine by agreeing to move their business from NuVasive to Stryker Spine.

9

35. As a result of Defendants' solicitations of the Methodist Surgeons, the Methodist Surgeons moved all of their business to Stryker Spine.

36. In addition to seeking to convert NuVasive's business, one or more of the Defendants, directly or indirectly through Stryker Spine, reached out to one of NuVasive's sales professionals in Kansas City, Missouri (who is from Iowa), and successfully solicited him to leave NuVasive, move to Iowa, and join them at Stryker Spine.

37. Defendants solicited the Kansas City-based sales professional in hopes that he could help support the business in the Sales Territory they illegally converted in the event the Court enjoins them from supporting that business.

38. As the Kansas City-based sales professional has not yet arrived in Iowa, Defendant DeWall supported a surgery performed by a NuVasive surgeon customer (and who the Defendants regularly supported) in the Des Moines, Iowa, Metropolitan area on behalf of Stryker Spine on May 24, 2021.

**Defendants spoliated relevant evidence**

39. On May 18, 2021, NuVasive instructed Defendants to return their company-issued electronic devices and not to delete any information contained on those devices. NuVasive attaches copies of its emails to Defendant Harrison, Defendant DeWall, and Defendant Newell as **Exhibit 7**, **Exhibit 8**, **and Exhibit 9**, respectively.

40. Defendants ignored NuVasive's instructions to not delete information from their company-issued electronic devices and "wiped" those devices of communications and other materials that, upon information and belief, are relevant to this lawsuit.

41. Defendants knew or should have known that litigation was likely when they wiped their devices. Further, when they did so, it was with the intent to deprive NuVasive of information relevant to this dispute.

42. In addition to wiping their electronic devices, and in furtherance of their efforts to shield their communications from NuVasive, Defendants utilized software applications that encrypted their electronic communications with each other.

43. By encrypting their electronic communications with each other and, upon information and belief, Stryker Spine, and wiping their electronic devices, Defendants intended to (and did) deprive NuVasive of information that would support its positions in this dispute.

**Defendant Harrison is required to repay certain bonuses and/or advances**

44. On February 5, 2021, Defendant Harrison and NuVasive agreed to a compensation plan that, without limitation, set his commission structure and provided him certain guaranteed bonuses. NuVasive attaches a copy of Defendant Harrison's compensation plan as **Exhibit 10**.[1]

---

[1] Exhibit 10 contains confidential information and will be filed under seal once leave is granted.

11

45. One of the guaranteed bonuses is titled "Compensation Related to Harrison/DeWall Territory." This bonus called for Defendant Harrison to receive a $ [REDACTED] bonus on January 15, 2021, and a $ [REDACTED] bonus on April 15, 2021. The terms and conditions of this bonus require Defendant Harrison to repay any payments he received in the twenty-four months prior to the date he voluntarily terminates his NuVasive employment.

46. Not only did NuVasive make the bonus payments described in the preceding paragraph to Defendant Harrison, it mistakenly paid the January 15, 2021, bonus twice, meaning that it paid Defendant Harrison a total of $ [REDACTED].

47. Defendant Harrison voluntarily terminated his NuVasive employment of May 16, 2021, but he has not returned the bonus payments.

48. Another bonus contemplated by Defendant Harrison's 2021 compensation plan is titled "Q1 2021 Team Retention Bonus." Pursuant to Defendant Harrison's 2021 compensation plan, he received a $ [REDACTED] payment on April 15, 2021, which he is required to return if he voluntarily terminates his NuVasive employment within twelve months of receiving the payment.

49. Harrison, in fact, received the $ [REDACTED] payment pursuant to the Team Retention Bonus. Harrison has not returned the money to NuVasive.

**Defendant DeWall is required to repay certain bonuses and/or advances**

50. On October 8, 2020, Defendant DeWall and NuVasive agreed that Defendant DeWall would be entitled to a bonus of $ [REDACTED] payable within 15 days of December 31, 2020, which he would be required to pay back if he terminated his employment within twenty-four months of receiving the bonus. NuVasive attaches a copy of the document entitling Defendant DeWall to this bonus as **Exhibit 11**.[2]

51. Defendant DeWall, in fact, received the $ [REDACTED] bonus. Despite voluntarily terminating his NuVasive employment within twenty-four months of receiving that payment, he has not returned it to NuVasive.

## COUNT I – BREACH OF DUTY OF LOYALTY

52. NuVasive incorporates and reasserts paragraphs 1 through 51.

53. As a NuVasive employee and its face and direct line of contact to each of its spine surgeon customers in Iowa, each Defendant owed NuVasive a duty of loyalty.

54. Each Defendant breached his fiduciary duty to NuVasive by, without limitation, soliciting the Methodist Surgeons (and perhaps others) to utilize Competitive Implants, supporting the Methodist Surgeons' (and perhaps others)

---

[2] Exhibit 11 contains confidential information and will be filed under seal once leave is granted.

13

utilization of those products in the operating room, and then not reporting the Methodist Surgeons' (and perhaps others) usage of the Competitive Products to NuVasive.

55.   Each Defendants' breach of his duty of loyalty to NuVasive proximately caused it to incur damages.

### COUNT II – BREACH OF PIIAS (Damages)

56.   NuVasive incorporates and reasserts paragraphs 1 through 51.

57.   Defendants voluntarily entered into their PIIAs with NuVasive, each of which is supported by adequate consideration including, without limitation:

- employment with NuVasive;
- access to NuVasive's industry-leading training;
- access to NuVasive's confidential and/or proprietary information; and
- access to NuVasive's customer base and goodwill.

58.   Defendants became the face of NuVasive to their customer base.

59.   The PIIAs contain reasonable non-competition and non-solicitation of employees (and in Defendant DeWall's and Defendant Newell's situations, non-solicitation of customers) obligations.

60.   The geographic scope and temporal terms of the non-competition and non-solicitation are enforceable as they are limited to the Defendants' collective sales territory and last for only one year after their NuVasive employment terminates.

61. Defendant's restrictions on soliciting NuVasive's employees is reasonable and enforceable.

62. NuVasive performed its obligations under each PIIA.

63. Defendants breached and continue to breach their non-solicitation and non-competition obligations to NuVasive by, without limitation, directly and/or indirectly:

- soliciting or otherwise encouraging NuVasive's employees and/or agents to leave NuVasive and join them at Stryker Spine;
- soliciting and selling competitive products to their NuVasive Customers;
- supporting the use of utilization of Stryker Spine's products in the operating room; and
- receiving purchase orders for the utilization of Stryker Spine's products in order to help facilitate Stryker Spine's sales of Competitive Implants within their restricted territories.

64. Defendants' violations of their restrictive covenants have harmed and continue to harm NuVasive.

### COUNT III – BREACH OF PIIAS (Injunctive Relief)

65. NuVasive incorporates and reasserts paragraphs 1 through 51.

66. NuVasive is entitled to the benefit of its bargain with each Defendant.

67. NuVasive is likely to succeed on the merits of its claims for breach of duty of loyalty and breach of contract against each Defendant. Indeed, the PIIAs are valid and binding contracts that are supported by adequate consideration, and no cause exists for Defendants' individual and collective failure(s) to comply with their terms and conditions.

68. NuVasive will suffer immediate and irreparable harm if it is not granted injunctive relief. Money damages alone will not make NuVasive whole as, absent an injunction, Defendants' continued efforts will, among other things, cause NuVasive to lose market share, rob NuVasive of the goodwill Defendants developed on its behalf, and adversely affect its ability to compete fairly within Defendants former shared sales territory.

69. Granting NuVasive injunctive relief will not harm Defendants, as it will only require them to do what they are contractually obligated to do. Further, each Defendant has received the benefit of his bargain with NuVasive and NuVasive should not be deprived of the benefit of its bargain with each Defendant.

70. Issuing the requested injunction will benefit the public as it has an interest in seeing reasonable and enforceable contractual obligations be enforced.

71. NuVasive is entitled to preliminary and permanent injunctive relief that enjoins each Defendant from continuing to violate his PIIA.

### COUNT IV – BREACH OF REPAYMENT OBLIGATIONS
### (DEFENDANT HARRISON)

72. NuVasive incorporates and reasserts paragraphs 1 through 51.

73. Defendant Harrison is contractually obligated to repay certain bonuses and/or other payments NuVasive made to him.

74. Despite being contractually obligated to repay those bonuses and/or other payments, Defendant Harrison has refused to do so.

75. Defendant Harrison's failure to repay the amounts owed to NuVasive has resulted in damages to NuVasive.

## COUNT V – BREACH OF REPAYMENT OBLIGATIONS (DEFENDANT DEWALL)

76. NuVasive incorporates and reasserts paragraphs 1 through 51.

77. Defendant DeWall is contractually obligated to repay certain bonuses and/or other payments NuVasive made to him.

78. Despite being contractually obligated to repay those bonuses and/or other payments, Defendant DeWall has refused to do so.

79. Defendant Harrison's failure to repay the amounts owed to NuVasive has resulted in damages to NuVasive.

## PRAYER FOR RELIEF

**WHEREFORE**, NuVasive respectfully requests that this Court:

A.	issue preliminary and permanent injunctions which prohibit Defendants from violating the non-competition and non-solicitation obligations in their PIIAs;

B.	extend the temporal restrictions in the Defendants' PIIAs by the length of time they have not complied with their non-competition and non-solicitation obligations;

C.	find that Defendants' violations of their PIIAs caused NuVasive to incur damages;

    D.    hold that Defendants are required to repay the bonuses NuVasive paid to them in calendar year 2021 that are subject to claw-back;

    E.    award NuVasive all of the damages it is entitled to receive;

    F.    award NuVasive pre and post-judgment interest; and

    G.    grant any other relief it deems just and proper.

## VERIFICATION

I reviewed the allegations in this Verified Complaint and verify, under penalty of perjury, through either my personal knowledge or knowledge I acquired while investigating the issues giving rise to this dispute, that the factual allegations within it (other than when disclaimed with "on information and belief" or other similar language) the accuracy of the facts contained in it.



Jon Adams

Respectfully submitted,

GULLETT, SANFORD, ROBINSON & MARTIN, PLLC
150 Third Avenue South, Suite 1700
Nashville, TN 37201
Tel: (615) 244-4994
Fax: (615) 256-6339

By: /s/ *William C. Scales, Jr.*
　　　William C. Scales, Jr.　　AT0011052
　　　wscales@gsrm.com

WHITFIELD & EDDY, P.L.C.
699 Walnut Street, Suite 2000
Des Moines, IA 50309
Telephone: (515) 288-6041
Fax: (515) 246-1474

By /s/ *Jason M. Casini*
　　　Jason M. Casini　　　AT0001475
　　　casini@whitfieldlaw.com

*Motions for Admission Pro Hac Vice Forthcoming:*

Christopher W. Cardwell, Esq.
Mary Taylor Gallagher
ULLETT, SANFORD, ROBINSON
　& MARTIN, PLLC
150 Third Avenue South, Suite 1700
Nashville, TN 37201
Tel: (615) 244-4994
Fax: (615) 256-6339

*Attorneys for NuVasive, Inc.*